UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CATHERINE BLAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV1742 AGF |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Catherine Blair returns to the Court[1] for judicial review of the final decision of the Commissioner of Social Security finding, upon remand by the Court, that she was no longer entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

**PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff applied for disability benefits on August 17, 1999, alleging that she was disabled as of June 1, 1996, due to depression, anxiety disorder, panic attacks, post traumatic stress disorder, suicidal tendencies, migraines, hallucinations, inability to deal with people, and being easily upset. On August 9, 2000, the Commissioner found that Plaintiff was disabled as of her alleged onset date. At the time, she had major depression

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

with psychotic features for which she had recently been hospitalized, and a Global Assessment of Functioning ("GAF") score of 30.[2]

Thereafter, pursuant to a continuing disability review ("CDR"), Plaintiff was notified that it was determined that she was no longer disabled as of August 13, 2003, and that her benefits would cease effective October 15, 2003. Pursuant to a Pschiatric Review Technique form dated August 13, 2003, psychologist Judith McGee, Ph. D., had concluded that Plaintiff was no longer significantly limited in several work-related activities and only moderately limited in other such activities, and was capable of performing simple tasks in a low stress environment, with perhaps some extra support needed in times of stress. (Tr. 389-403.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on February 2 and 7, 2005, at which only Plaintiff testified. (Tr. 30-51.)

**ALJ's Decision of May 27, 2005** (Tr. 11-18)

By decision dated May 27, 2005, the ALJ first determined that there was no evidence that Plaintiff had engaged in substantial gainful activity since she had been

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate "[s]ome impairment in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment.

2

awarded benefits. He then determined that her depression and anxiety did not meet the requirements of a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ then found that Plaintiff had experienced marked medical improvement related to her ability to work. The ALJ determined, however, that Plaintiff's depression and anxiety were "severe" impairments, as that term is defined in the Commissioner's regulations, and proceeded to consider whether Plaintiff had the residual functional capacity ("RFC") to perform her past work, or if not, other work that existed in the economy.

The ALJ found that Plaintiff had improved with treatment to the extent that she could "demonstrate reliability and respond appropriately to routine changes in a work setting, deadlines, supervisors, coworkers and the public." In support of this conclusion, the ALJ credited the essentially unremarkable mental status examination findings of Marsha Mertens, M.D., Plaintiff's treating physician, over time. And the ALJ discredited the opinions of David Ohlms, M.D., Plaintiff's treating psychiatrist since May 2000, who opined in February 2004 and January 2005 that Plaintiff remained disabled due to her depression; and the opinions of examining consulting psychologist, Harry Deppe, Ph.D., who diagnosed bi-polar disorder and a GAF of 50 on July 24, 2003.

The ALJ also found that Plaintiff's subjective allegations of symptoms precluding all types of work were not credible. The ALJ found that Plaintiff had no physical limitations on her ability to work and that, in light of the above assessment of her work-related mental abilities, she had the RFC as of August 15, 2003, to perform her past

3

relevant work in bookkeeping/data entry, and was thus no longer disabled as of that date.

**Court's Decision in Blair v. Barnhart** (Tr. 624-67)

After her request for review by the Appeals Council of the Social Security Administration was denied, Plaintiff sought judicial review by the Court. On August 24, 2006, in a thorough and extensive opinion, a different Judge of this Court reversed the Commissioner's decision and remanded the case for testimony by a vocational expert ("VE"). Blair v. Barnhart, No. 4:05CV2047MLM (E.D. Mo. Aug. 24, 2006). After summarizing in detail the administrative record (including Plaintiff's application forms, the medical evidence which went through December 2005, and Plaintiff's hearing testimony), the Court held that the ALJ had properly credited Dr. Mertens' findings over those of Drs. Ohlms and Deppe. The Court reviewed the reasons offered by the ALJ for doing so and found that they were valid and supported by the record. The Court explained that it was the ALJ's function to resolve conflicts among various treating and examining physicians. The Court also noted that Dr. Mertens' unremarkable treatment notes were consistent with Dr. McGee's August 13, 2003 findings, as well as with the November 13, 2003 mental RFC assessment by nonexamining state consulting psychologist Sherry Bassi, Ph.D., who found that Plaintiff was not significantly limited in many work-related activities and moderately limited in others.

The Court further held that the ALJ's finding that Plaintiff's condition had substantially improved was supported by substantial evidence on the record and was consistent with relevant case law and regulations. The Court rejected Plaintiff's

4

argument that the ALJ should have developed the record further by recontacting certain physicians, noting that the record was extensive and that Dr. Mertens' records were specific and detailed with regard to Plaintiff's condition during the relevant time period.

The Court next held that the reasons offered by the ALJ in support of his credibility determination with respect to Plaintiff's subjective allegations were also based on substantial evidence and were consistent with Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (setting forth the relevant factors in evaluating a claimant's subjective complaints). The Court reviewed each reason set forth by the ALJ and found all to be valid and supported.

The Court held, however, that because the ALJ had found that Plaintiff had a severe mental impairment, the ALJ erred in concluding, without obtaining the testimony of a vocational expert ("VE"), that Plaintiff could perform her past work. The Court held that accordingly, the ALJ's decision that Plaintiff was not disabled was not supported by substantial evidence. The Court reversed and remanded the case, directing the ALJ on remand to submit a hypothetical question to a "VE," asking whether a person with Plaintiff's severe mental impairment as found by the ALJ could perform Plaintiff's past work, or if not, other work that existed in the economy. Id.

**New Medical Records**

New medical records entered into the administrative record following the remand include treatment notes by Dr. Mertens from February through October 2006, showing diagnoses of diabetes, depression, migraines, and hypertension. (Tr. 853-70.) On March

5

6, 2006, an examining psychiatrist diagnosed bi-polar affective disorder and a current GAF score of 60 (indicating moderate impairment in occupational settings; a score of 61 indicates mild impairment). (Tr. 838-42.) By letter dated June 27, 2006, social worker Jennifer Hoffman recounted that she had seen Plaintiff for therapy at Jewish Family and Children's Services ("JFCS") 12 times since Plaintiff began therapy there on February 6, 2006. Ms. Hoffman reported a GAF of 45 and stated that she could not more specifically describe how Plaintiff's impairments would impact her ability to function on a job. (Tr. 837.)

Also on June 27, 2006, Dr. McGee completed a Mental RFC Assessment based upon her review of the record. She indicated that Plaintiff was not significantly limited in several work-related functions and moderately limited in others. Dr. McGee wrote in narrative form that Plaintiff could adapt to her environment and follow a set routine. (Tr. 764-66.)

JFCS progress notes dated July 17, August 10, September 7, September 21, October 5, and November 6, 2006, show that Plaintiff was diagnosed with bi-polar affective disorder, depression, PTSD, and generalized anxiety disorder with panic attacks. (Tr. 829-34.) On November 20, 2006, Dr. Jurec completed a Mental RFC Questionnaire, noting that she had seen Plaintiff only once since Plaintiff began coming to JFCS. Dr. Jurec diagnosed bi-polar affective disorder, PTSD, generalized anxiety disorder, and a current and past-year GAF of 55-60. Dr. Jurec indicated in check-list format that Plaintiff's ability to function in all unskilled-work-related activities that were

6

listed on the form was seriously limited but not precluded. She also opined in checkbox format that Plaintiff would miss more than four days of work per month. (Tr. 823-28.)

**Evidentiary Hearing of January 31, 2007** (Tr. 597-609)

Following remand, a new hearing was held before a different ALJ on January 31, 2007, at which Plaintiff and a VE testified. Plaintiff, who was represented by counsel, testified that she was 36 years old and had a GED. She testified about her past work as a bookkeeper, cashier and a cook at a restaurant, in retail sales, and as a cashier at a convenience station. Plaintiff testified she had begun receiving psychological treatment from JFCS in March 2006, seeing a therapist once every one or two weeks, and psychiatrist Anna Jurec, M.D., every two or three months. Plaintiff stated that her psychological problems included anxiety and depression, causing anxiety in public places, as well as crying spells, headaches, and nightmares. She was taking medication for her headaches, which usually helped. She said that she had problems going to sleep and staying asleep, and that she normally got between four and six hours of sleep per night. She lived with her 13-year old daughter, mother, and two dogs.

Plaintiff testified that she sometimes experienced chest pain, but that tests indicated that her heart was good. She was on medication for diabetes, high blood pressure, and high cholesterol. She was approximately 5' 5" tall and weighed approximately 238 pounds; she considered her normal weight to be about 160, which was what she weighed in 2000. Plaintiff testified that the extra weight caused her difficulty in exercising, walking, and in doing household chores. When questioned by counsel,

7

Plaintiff testified that when she experienced chest pain, she would have to sit down for about ten to 15 minutes and breathe deeply.

The ALJ asked the VE to consider an individual with Plaintiff's vocational factors who was able to lift and carry up to 20 pounds occasionally and ten pounds frequently; sit for six hours out of eight hours; stand or walk for six hours out of eight hours; understand, remember, and carry out simple instructions and undetailed tasks; respond appropriately to supervisors and coworkers in a task-oriented and nonpublic setting; adopt and adapt to a work environment; be comfortable around people; and follow a set routine. The ALJ asked whether such a person could perform Plaintiff's past relevant work. The VE responded in the negative, but testified that such a person would be able to perform such tasks as light cleaning and housekeeping.

The ALJ then asked the VE to consider a second hypothetical with the same physical restrictions as listed above, though with a psychological restriction to simple repetitive tasks in a low stress environment. The VE replied that such a person could not perform Plaintiff's past relevant work, but would still be able to perform the jobs listed above. In response to further questioning by the ALJ, the VE testified that there would be no jobs that an individual with the above vocational factors and physical abilities, but with the RFC found by Dr. Ohlms on February 17, 2004, could perform.

Plaintiff's attorney asked the VE whether an individual with the impairments found by Dr. Deppe would be able to perform any past relevant work or other work, to which the VE replied in the negative. The VE also stated that if an individual would miss

8

four days of work per month, as found by Dr. Jurec, all jobs would be precluded.

**ALJ's Decision of April 27, 2007** (Tr. 565-73)

At the beginning of his decision, the second ALJ (hereinafter "the ALJ") explained that on May 10, 2006, while the CDR case was pending in court, Plaintiff filed a new application for disability benefits alleging an onset date of May 28, 2005 (the day after the first ALJ's decision in the CDR case found that her disability had ceased on August 15, 2003). The ALJ stated that the new claim was heard along with the CDR claim at the January 31, 2007, hearing, and that a separate decision was being issued on the new claim on the same day, April 27, 2007.

The ALJ's CDR decision for the most part tracks the first ALJ's decision of May 27, 2005, verbatim. Thus, the ALJ found for the identical reasons as had the first ALJ, that Plaintiff had not engaged in substantial gainful activity since being awarded disability benefits; that Plaintiff did not have a listing-severity condition; that she had experienced medical improvement related to her ability to work; that her depression and anxiety were "severe" impairments; that her condition had improved with treatment to the extent that she could demonstrate reliability and respond appropriately to routine changes in a work setting, deadlines, supervisors, coworkers, and the public; that Dr. Mertens' findings during the relevant time periods were more credible than the opinions of Drs. Ohlms and Deppe; and that Plaintiff's subjective allegations of symptoms precluding all types of work were not credible.

The ALJ noted, as had the first ALJ, that most weight was accorded to Dr.

9

Martens' treatment findings.  The ALJ added his observation that the most recent medical source statement from a treating psychiatrist (i.e., Dr. Jurec's November 20, 2006 statement) was inconsistent with Dr. Ohlms's functional findings, as she found that all abilities needed for unskilled work were not precluded.  The ALJ also formulated his own RFC assessment, finding that while Plaintiff could not engage in heavy, strenuous, complex, detailed, or highly stressful work activities, she could perform "lighter, simpler forms of work."  He found that physically, Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, stand and walk for six out of eight hours, and sit for six out of eight hours; and that mentally, she was restricted to simple repetitive tasks in a low stress environment.  Noting the VE's testimony that this RFC precluded Plaintiff's past work, the ALJ recognized that the burden shifted to the Commissioner to demonstrate that there was other work Plaintiff could perform consistent with her vocational factors (age, education, work experience) and RFC.  Based upon the VE's testimony, the ALJ concluded that Plaintiff could work as a cleaner or (light) stocker, and that the decision to cease benefits was supported by "ample medical evidence and opinions consistent with that evidence."

The Appeals Council declined jurisdiction, making the ALJ's decision of April 27, 2007, the final agency action now subject to judicial review.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing an adverse decision by the Commissioner in a Social Security

disability case, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The CDR process involves a sequential analysis prescribed in 20 C.F.R. § 404.1594(f), pursuant to which the Commissioner must determine the following:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to

medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

Delph v. Astrue, 538 F.3d 940, 945-46 (8th Cir. 2008) (citations omitted).

**ALJ's Assessment of Plaintiff's RFC**

Plaintiff argues that in assessing Plaintiff's RFC, the ALJ erred in not giving more weight to Dr. Ohlms' opinion and that the ALJ's reasons for not doing so, and for giving more credit to Dr. Mertens' findings, are not supported by the record. The Court believes that the doctrines of law of the case, res judicata, and/or collateral estoppel preclude Plaintiff from now arguing that the ALJ erred in crediting Dr. Mertens' findings over those of Dr. Ohlms. See Rabadi v. Astrue, 283 Fed. Appx. 521-23 (9th Cir. 2008) (indicating that district court reviewing adverse disability determination in case that had previously been remanded by the court for further proceedings, correctly applied the law of the case doctrine to issues that were actually decided by the court in the case prior to the remand). Nor does the Court take exception to these findings in the prior opinion. And looking to the new evidence, the Court cannot say that the new evidence and testimony undermines the prior Court's analysis and conclusion on this very same question. The new evidence, including Plaintiff's testimony at the January 31, 2007 hearing, does not suggest a deterioration in Plaintiff's condition since the Court's decision in Blair v. Barnhart.

**Hypothetical Posed to the VE**

In a related argument, Plaintiff argues that the hypothetical question posed to the VE did not adequately capture the true extent of Plaintiff's impairments, and that thus the VE's answer did not constitute support for the ALJ's decision. Specifically, Plaintiff faults the ALJ for not including in the hypothetical question the facts that the individual under consideration would miss four days of work per month, as suggested by Dr. Jurec, whose opinion the ALJ credited in other regards.

Plaintiff is correct that in order to constitute substantial evidence upon which to base a denial of benefits, or in this case the termination of benefits, the testimony of a VE must be in response to a hypothetical question which "capture[s] the concrete consequences of the claimant's deficiencies." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (citation omitted); testimony by a VE "based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." Hillier v. Soc. Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007) (citation omitted). The question, however, need not include alleged limitations which the ALJ properly discredits. Randolph v. Barnhart, 386 F.3d 835, 841-42 (8th Cir. 2004).

Upon review of the entire record, as well as the record and Court's decision in Blair v. Barnhart, the Court concludes that the ALJ's RFC assessment, and hence the hypothetical question posed to the VE based upon that RFC, was supported by the record. The ALJ was not required to accept Dr. Jurec's opinion with regard to the number of days Plaintiff might miss from work. The ALJ was entitled to rely upon the other medical

13

opinions in the record which did not suggest such a limitation. The Court notes that the Eighth Circuit has held that GAF scores in the upper 50s are consistent with the ability to perform simple, unskilled work, as was found here. See, e.g., Goff v. Barnhart, 421 F.3d 785, 789, 791, 793 (8th Cir. 2005)

While there is evidence to support a contrary result, the ALJ's RFC determination is supported by substantial evidence on the record as a whole, most importantly, by Dr. Mertens' opinion. As noted above, "[i]t is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo. If after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioners's findings, [the court] must affirm the denial of benefits." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citations omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 20th day of March 2009.